<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARILYN WAGNER, on behalf of B.D., a Minor,<br><br>      Plaintiff,<br><br>v.<br><br>CITY OF NEWARK, DARNELL HENRY, RODNEY SIMPKINS, in his individual and professional capacities, JOHN DOE OFFICER 1-5, JANE DOE OFFICER 1-5, JOHN DOE SERGEANT 1-5, JANE DOE SERGEANT 1-5,<br><br>      Defendants. | Civil Action No. 23-731 (SDW)(MAH)<br><br>**OPINION**<br><br>May 24, 2024 |

**WIGENTON**, District Judge.

   Before this Court are Defendants City of Newark (the "City"), Detective Rod Simpkins, and Chief of Police Darnell Henry's (collectively, "Defendants") Motions to Dismiss[1] (D.E. 37–39 ("Motions")) Plaintiff Marilyn Wagner's ("Plaintiff") Complaint (D.E. 1) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367(a).  Venue is proper pursuant to 28 U.S.C. § 1391.  This opinion is issued without oral argument pursuant to Rule 78.  For the reasons stated herein, the Motions are **GRANTED**.

## I.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

---

[1] Plaintiff has also named Officers John Doe 1–5, Officers Jane Doe 1–5, John Doe Sergeants 1–5, and Jane Doe Sergeants 1–5 of the Newark Police Department as defendants.  Although courts may "allow claims based upon 'fictitious' defendants because they may be found and named later through the discovery process," *K.J. ex rel. Lowry v. Div. of Youth & Fam. Servs.*, 363 F. Supp. 2d 728, 740 (D.N.J. 2005) (citing *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004)), where Plaintiff has failed to plead facts sufficient to sustain a claim against any defendant, claims against fictitious defendants will be dismissed as well.

### A.  Carl Dorsey's Death on January 1, 2021[2]

On January 1, 2021, just after midnight, Defendant Detective Simpkins of the Newark Police Department ("NPD") shot and killed Carl Dorsey III, a Black man in his 30s, when he and unnamed Doe officers were responding to reports of gunshots at the intersection of Woodland Avenue and South Eleventh Street in Newark, New Jersey.  (D.E. 1 ¶¶ 6–15.)  Surveillance video footage from a nearby residence ("Video") captured the incident.[3]  (*Id.* ¶ 10.)

Simpkins was in plain clothes and traveling in an unmarked police vehicle.  (*Id.* ¶¶ 6–15.)  The car stopped in front of Dorsey as he was crossing the street.  (*Id.*)  At the same time, Simpkins quickly exited from the rear passenger door, leaving the door open, and ran towards Dorsey.  (*Id.*)  The two men collided and spun around, facing each other.  (*Id.*)  As Dorsey was backing away from Simpkins, Simpkins fired his gun at Dorsey without warning and fatally shot him in the torso.  (*Id.*)  Dorsey did not fit the description of any shooting suspects and did not carry or appear to be carrying a weapon.  (*Id.* ¶ 22.)

### B.  Procedural History

On or about August 31, 2022, Plaintiff filed the instant suit against Defendants in the Superior Court of New Jersey, Law Division, Essex County, asserting constitutional claims under 42 U.S.C. §1983 and the New Jersey Civil Rights Act ("NJCRA"), and common law tort claims under the New Jersey Tort Claims Act ("NJTCA").  (*See* D.E. 1-1.)  Thereafter, Defendants removed the case to this Court on February 8, 2023.  (*See* D.E. 1.)  Defendants moved to dismiss

---

[2] The underlying facts upon which this action arose are identical to those in *Fong v. City of Newark*, No. 22-7243, 2023 WL 8947378 (D.N.J. Dec. 28, 2023), but the facts pleaded in Plaintiff's Complaint are somewhat different.

[3] This Court is guided in part by the Video of the incident.  In cases where relevant events are captured on video, courts should analyze the facts as they are depicted in the video over the parties' characterizations of said events.  *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

the Complaint in September 2023, and the parties timely completed briefing.[4]  (*See* D.E. 37–39, 40–42, 44, 45, 47.)

## II.   <u>LEGAL STANDARD</u>

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) ("[I]n light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief").

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips*, 515 F.3d at 231 (citation omitted).  A court, however, need not accept as true allegations that are "recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  (citation omitted)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard).

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*,

---

[4] Defendants initially moved to dismiss the Complaint (D.E. 18, 19, 20) in May 2023, contending that Plaintiff lacked standing to sue because she had not been appointed administratrix *ad prosequendum*.  At that time, Plaintiff's application for administratrix *ad prosequendum* was pending in state court, and this Court terminated Defendants' first Motions to Dismiss without prejudice so Defendants may move to dismiss the case after the resolution of Plaintiff's application.

556 U.S. at 679.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2).  *Id.*  Moreover, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

## III.    **DISCUSSION**

The Complaint contains ten counts[5], asserting common law claims[6] under the NJTCA and constitutional claims under § 1983 and the NJCRA for violations of Dorsey's rights under the United States and New Jersey Constitutions.

To state a claim under § 1983, a plaintiff must allege facts showing that (1) he was deprived of "rights, privileges, or immunities" afforded him under the United States Constitution or other federal law, and (2) "the conduct complained of was committed by a person acting under color of state law."  *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011); *see* 42 U.S.C. § 1983.[7]  Section 1983 does not create any substantive rights; it merely provides a means to redress violations of federal law committed by state actors.  *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

---

[5] Plaintiff erred in labeling her claims, omitting a Count Three.  For the sake of clarity, this Court refers to the counts as they are labeled.  (D.E. 1-1 at 3–8.)

[6] Plaintiff's common law claims are:  assault (Count VI), battery (Count VI), gross negligence (Count VII), negligence (Count VIII), intentional infliction of emotional distress (Count IX), and *respondeat superior* liability (Count X).  (*See* D.E. 1-1 at 2–12.)

[7] Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

Civil claims for deprivation of or interference with a person's rights guaranteed by the laws and Constitutions of New Jersey and the United States can be asserted by way of the NJCRA.  N.J. Stat. Ann. § 10:6-1 *et seq.*; *see Gormley v. Wood-El*, 93 A.3d 344, 358 (N.J. 2014) ("Section 1983 applies only to deprivations of federal rights, whereas [the NJCRA] applies not only to federal rights but also to substantive rights guaranteed by New Jersey's Constitution and laws.").  Because the NJCRA is interpreted analogously to § 1983, this Court's § 1983 analysis controls Plaintiff's NJCRA claims as well.[8]  *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) (noting that the NJCRA "was modeled after 42 U.S.C. § 1983"); *Perez v. Zagami, LLC*, 94 A.3d 869, 875 (N.J. 2014) (stating that the NJCRA is "a state law analogue to Section 1983") (footnote omitted).

The NJTCA provides for limited circumstances under which a plaintiff may bring a tort claim against public entities and employees.  *See* N.J. Stat. Ann. § 59:1-1 *et seq.*; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (stating that sovereign immunity bars suits against a State or its officials without its consent).  Generally, "[e]xcept as otherwise provided by [the NJTCA], a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  N.J. Stat. Ann. § 59:2-1(a).  Under one such exception, "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment . . . ."  *Id.* § 59:2-2(a).  A

---

[8] The NJCRA provides that:

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J. Stat. Ann. § 10:6-2(c).

public employee, however, is not liable for "acts in good faith in the execution or enforcement of any law." *Id.* § 59:3-3.

Defendants move to dismiss the Complaint under Rule 12(b)(6) on the grounds that (1) Simpkins is entitled to qualified immunity; (2) the Complaint fails to show that Plaintiff has met the notice requirement under the NJTCA; (3) the Complaint fails to sufficiently plead standing under the New Jersey Survivor's Act ("Survivor's Act"), N.J. Stat. Ann. § 2A:15-3; and (4) that the Complaint fails to state a claim against the City and Henry upon which relief can be granted. This Court will address each of Plaintiff's claims in turn.

### A. Standing

Defendants argue that, as a threshold matter, the Complaint fails to sufficiently plead standing as required by the Survivor's Act. Although Plaintiff attached her appointment as administratrix *ad prosequendum* ("AAP") in her opposition briefs, this crucial information is not part of the Complaint. Therefore, the Complaint is dismissed without prejudice, and Plaintiff may amend her Complaint to reflect her status as AAP for Dorsey's estate.

The Survivor's Act "gives executors or administrators a right of action for tortious injury or damage to the deceased or his property incurred prior to death." *Alexander v. Whitman*, 114 F.3d 1392, 1399 (3d Cir. 1997) (quoting *Alfone v. Sarno*, 403 A.2d 9, 13 (N.J. Super. App. Div. 1979)). In 2022, the New Jersey Legislature amended the Survivor's Act, which now provides that if a plaintiff was qualified for, but did not yet obtain, AAP status at the time she filed suit, the plaintiff may amend her Complaint to reflect her AAP status if she was later appointed as AAP during the pendency of the case.[9] *See Chandler v. Kasper*, No. A-2143-202022, WL 2163725, at *1–3 (N.J. Super. Ct. App. Div. June 14, 2022).

---

[9] The Survivor's Act provides that:

Plaintiff was not AAP when she filed this action in state court, and she obtained her AAP designation from the Superior Court of New Jersey in Essex County on September 29, 2023. Because New Jersey state courts have allowed similarly situated plaintiffs to amend their Complaints, *see, e.g.*, *Liu v. Affinity Care of NJ*, No. A-0970-21, 2022 WL 17366271 (N.J. Super. Ct. App. Div. Dec. 2, 2022), Plaintiff is permitted to amend her Complaint to cure this defect and the Complaint is dismissed without prejudice.

### B.  Compliance with the NJTCA (Counts VI–IX)

Defendants argue that Plaintiff's common law tort claims must be dismissed for non-compliance with the NJTCA's notice requirement. Although Plaintiff demonstrates in her opposition briefs that she timely filed the notice of claim with the City, (D.E. 41, 42), Plaintiff did not plead compliance in her Complaint.[10]  Therefore, Plaintiff's tort claims will be dismissed without prejudice.

The NJTCA requires a claimant to file a notice of claim with the entity being sued within ninety days of the tort claim's accrual.  N.J. Stat. Ann. § 59:8-8; *see Tripo v. Robert Wood Johnson Med. Ctr.*, 845 F. Supp. 2d 621, 626 (D.N.J. 2012).  The NJTCA provides a limited exception to the ninety-day requirement if the claimant can show, "within one year after the accrual of his claim," both "extraordinary circumstances," which prevented the timely filing of the notice, and

---

In the case of a plaintiff qualified for appointment as administrator who was not yet appointed administrator at the time the plaintiff commenced an action under this section, the court may allow the plaintiff to be designated administrator for the purposes of this section and to allow the plaintiff to amend pleadings nunc pro tunc relating back to the plaintiff's first filed pleading to reflect the designation.

N.J. Stat. Ann. § 2A:15-3(2).

[10] A plaintiff must also meet other requirements under the NJTCA before a tort claim may be filed against a public entity or employee.  *See* N.J. Stat. Ann. § 59:8-1 *et seq.*  This Court, however, need not address whether Plaintiff has met the other provisions of the NJTCA to rule on the Motion, and Defendants have raised no other issues regarding Plaintiff's compliance with the other requirements of the NJTCA.

that the defendant is not "substantially prejudiced" by a later filing.  N.J. Stat. Ann. § 59:8-9.  A plaintiff is "forever barred from recovering against a public entity or public employee" if she fails to timely file a notice or if "[t]wo years have elapsed since the accrual of the claim." *Id.* § 59:8-8.

Nothing in the Complaint indicates whether Plaintiff filed a timely notice or was granted permission to file a late notice.  Therefore, Plaintiff has not sufficiently pled this Court's jurisdiction over her tort claims. *See Alvarado v. Johnson*, No. 19-18574, 2020 WL 3819211, at *2 (D.N.J. July 8, 2020) (dismissing without prejudice plaintiff's tort claims because "the pleadings in the complaint do not indicate that [plaintiff] filed any such pre-suit notices required by the NJTCA").

Plaintiff shows in her opposition briefs that a notice of claim form was sent to the City on March 22, 2021 and that the City of Newark acknowledged receipt of the notice four days later. (*See* D.E. 41-2.)  The Third Circuit, however, has made clear that in deciding a motion to dismiss, "a court must consider only the complaint" and "exhibits attached to the complaint." *Belichick*, 605 F.3d at 230.  Therefore, Plaintiff's tort claims are dismissed without prejudice.

### C.  Gross Negligence (Counts VII)

Only Henry challenges the sufficiency of the Complaint's allegations for the gross negligence claim.  Count VII alleges in a general manner that Defendants owed a duty to Dorsey and breached that duty when Defendants shot Dorsey.  "Group pleadings are insufficient to sustain a claim as a matter of law" because they "fail to put defendants on notice of the claims against them." *Miretskaya v. Rutgers State Univ. of N.J.*, No. 20-14856, 2022 WL 3020153, at *3 (D.N.J. July 29, 2022).  It is unclear on the face of the Complaint what action of Henry and/or the City constitutes gross negligence as neither Defendant was physically present at the incident nor had any direct involvement in it.  The Complaint also fails to identify each defendant's role in the

alleged wrong as required by Rule 8.  *Pushkin v. Nussbaum*, No. 12-324, 2017 WL 1591863, at *7 (D.N.J. Apr. 28, 2017).  Thus, Count VII will be dismissed without prejudice.

### D.  Qualified Immunity, Good Faith Immunity, and the Sudden Emergency Doctrine

#### 1.    *Qualified immunity*

Simpkins and Henry argue that the Complaint must be dismissed based on qualified immunity.  Qualified immunity does not shield Simpkins and Henry at this stage, however.  On this limited record, this Court cannot conclude that Simpkins' and Henry's actions were objectively reasonable.

"The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To determine whether qualified immunity applies, courts must engage in a two-part inquiry:  First, do the allegations in the complaint show that defendant's conduct violated a constitutional right; second, was the constitutional right clearly established at the time of the alleged violation.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (no longer requiring courts to determine *Saucier* prongs in sequential order).

"[Q]ualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint."  *Thomas v. Independence Twp*., 463 F.3d 285, 291 (3d Cir. 2006).  "[T]he burden of pleading a qualified immunity defense rests with the defendant, not the plaintiff."  *Id.* at 293.  Although qualified immunity issues should be resolved at "the earliest possible stage in litigation," *see id.* at 291 (citing *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)), the

Third Circuit has cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009).

This Court will analyze Simpkins' and Henry's claim for qualified immunity in turn. [11]

    a.  Detective Simpkins

At this stage, Simpkins is not entitled to qualified immunity as he has not shown his use of deadly force on Dorsey was objectively reasonable.

Courts in the Third Circuit have applied the objective reasonableness standard to excessive force and unreasonable seizure claims when determining whether qualified immunity should apply. *See, e.g.*, *Santini*, 795 F.3d at 417 ("In an excessive force case, we determine whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test.") (citations omitted); *Tofano v. Reidel*, 61 F. Supp. 2d 289, 299 (D.N.J. 1999) (applying the reasonableness standard to both excessive force and unreasonable seizure claims). The objective reasonableness test is a fact-sensitive inquiry into "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure." *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985).

Specifically, the Supreme Court has articulated three factors that must be considered in determining whether the use of force was reasonable in a given case: (1) "the severity of the crime at issue," (2) "whether the suspect pose[d] an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] actively resist[ed] arrest or attempt[ed] to evade arrest by flight." *Graham*, 490 U.S. at 396. The Third Circuit expanded this inquiry in *Sharrar v. Felsing* to include (4) "the possibility that the persons subject to the police action are themselves violent

---

[11] Qualified immunity under the NJCRA "tracks the federal standard." *Brown v. State*, 165 A.3d 735, 743 (N.J. 2017). Thus, this Court's qualified immunity analysis applies equally to Plaintiff's NJCRA claims.

or dangerous," (5) "the duration of the action," (6) "whether the action takes place in the context of effecting an arrest," (7) "the possibility that the suspect may be armed," and (8) "the number of persons with whom the police officers must contend at one time."  128 F.3d 810, 822 (3d Cir. 1997).  Moreover, this Court must analyze the objective reasonableness of the officers' behavior "from the perspective of the officer[s] at the time of the incident and not with the benefit of hindsight."  *Santini*, 795 F.3d at 417.

The Complaint's allegations, taken as true as we must on a motion to dismiss, sufficiently state a claim of excessive force and unreasonable seizure.  "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable."  *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citation omitted).  Dorsey was obviously seized when Simpkins shot him.  *See Garner*, 471 U.S. at 7 ("[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment.").  The question here is whether Simpkins' use of deadly force was reasonable.

Deadly force will only be considered reasonable when "it is necessary to prevent escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others."  *Id.* at 3.  Probable cause means "facts and circumstances sufficient to warrant a prudent man into believing that the [suspect] had committed or was committing an offense."  *Gerstein v. Pugh*, 420 U.S. 103, 111 (1995) (citation and internal quotation marks omitted).

Applying the *Graham* and *Sharrar* factors to the facts alleged in the Complaint, this Court cannot conclude Simpkins' use of deadly force was reasonable under the totality of the circumstances.  *Cf. Lamont v. New Jersey*, 637 F.3d 177, 184 (3d Cir. 2011) (holding that an

11

officer's use of deadly force was reasonable when undisputed evidence shows that the suspect refused to comply with the officer's command that he show his hands and pulled his right hand abruptly out of his waistband as though he were drawing a pistol).  The factual allegations do not support any plausible inference that Dorsey was committing a crime, armed and/or dangerous, or resisted or attempted to evade arrest.[12]

Simpkins argues that he is entitled to qualified immunity for his reasonable belief that Dorsey posed a threat of serious physical harm.  He asserts that when Dorsey collided with him and caused him to fall to the ground, he was in a vulnerable position confronting a potential shooting suspect and had to make a split-second decision to fire his weapon.  Citing two cases for support, Simpkins unsuccessfully argues that his mistaken belief that Dorsey was armed and/or engaged in a crime was reasonable.  *See Richardson v. City of Newark*, 820 F. App'x 98, 100, 103 (3d Cir. 2020); *Conde v. City of Atl. City*, 293 F. Supp. 3d 493, 505 (D.N.J. 2017). These cases, however, are distinguishable.

In *Conde*, the court found that the defendant officer who shot and killed a suspect during pursuit had a reasonable belief that the suspect was armed because:  the suspect was known to the police and was described as armed on the police radio; several officers observed the suspect possessing a handgun during the pursuit; and non-law enforcement eyewitness accounts corroborated the defendant officer's testimony that he shot the suspect after the suspect began to turn toward him and reached into his waistband.

In *Richardson*, the Third Circuit found that the defendant officer's use of deadly force was reasonable based on the following non-contested facts:  Richardson had objects in his jacket's front

---

[12] Simpkins concedes in his briefing that after he shot Dorsey, other officers "rushed past him toward the shootout on or about Woodland Avenue" and apprehended an individual who pointed and discarded his gun at the scene on South Eleventh Street.  (D.E. 47-5 at 16.)  The suspect later pled guilty to a firearm charge.  (*Id.*)

pocket that could have formed a bulge when the defendant officer stopped him; Richardson fled immediately after the defendant officer felt the object in his jacket, and when the officer fired the shot that hit Richardson, he had just forced entry into an apartment building and attempted to forcibly pry open a different door in the building.

The Third Circuit has made clear that "a good faith belief in the legality of conduct is not sufficient[;] [s]uch belief must be objectively reasonable." Here, there are no facts analogous to those in *Conde* or *Richardson* that would suggest that Dorsey was armed, committing a crime, and/or attempting to evade arrest at the time Simpkins encountered him to justify the use of deadly force. Accordingly, Plaintiff has plausibly pled a violation of Dorsey's right to be free from excessive force and illegal seizure.

Furthermore, Simpkins does not sufficiently explain why he reasonably believed that Dorsey was a dangerous or armed criminal suspect. Instead, he sets forth an alternative set of facts disputed by Plaintiff, such as Dorsey "blind-sided," "assaulted," and "rapidly and suddenly turned toward" him. (D.E. 37-5 at 24.) Under Third Circuit precedent, it is improper for courts to grant qualified immunity at the pleading stage where there are material factual disputes relevant to determining whether an officer is entitled to qualified immunity. *See Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) ("Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury.") (citing *Johnson v. Jones*, 515 U.S. 304, 313, (1995)). Because factual disputes relevant to the determination of qualified immunity cannot be resolved on the present record, Simpkins is not entitled to qualified immunity at this stage.

Simpkins also has not met his burden, under step two of the qualified immunity analysis, in showing that it would not have been clear to a reasonable officer that his "conduct was unlawful

in the situation he confronted." *Santini*, 795 F.3d at 417.  "[N]umerous courts have held that the right to be free from excessive force, as defined by the reasonableness test of *Graham*, is clearly established."  *Tofano*, 61 F. Supp. 2d at 299 (citing *Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995) (stating that "[t]his court has held the reasonableness standard is 'clearly established' for purposes of section 1983 actions")).

Simpkins argues that there is no clearly established law precluding him from "using deadly force against an individual who was running from an active shooting scene, who used force against the detective to knock the detective down, and who was immediately spinning toward the detective as the detective was falling to the ground."  (D.E. 37-5 at 33.)  Again, Simpkins' argument rests on disputed facts.  As discussed above, the facts surrounding the encounter are limited on this record.  Thus, this Court cannot find that qualified immunity exists at the pleading stage.

    b. <u>Henry</u>

Henry contends that he is shielded by qualified immunity because "he was not responsible for policymaking, implementation, training, or discipline of officers" and he was not present when the incident took place.  Henry's argument, however, does not satisfy the two-pronged inquiry set forth in *Saucier*, 533 U.S. at 201.  Qualified immunity does not apply to Henry at this stage because he has not met his burden of showing that "immunity is established on the face of the complaint." *Thomas*, 463 F.3d at 291.

    2. *Good Faith Immunity and Sudden Emergency Doctrine*

Simpkins and Henry argue that the state law claims against them should be dismissed on the grounds of "good faith" immunity under the NJTCA and the common law sudden emergency doctrine.  These arguments are unpersuasive.

The NJTCA grants immunity to a public employee "if he acts in good faith in the execution or enforcement of any law." *Walker v. City of Newark*, No. 19-16853, 2020 WL 3542502, at *13 (D.N.J. June 30, 2020), *as amended* (July 1, 2020).  Whether Simpkins or Henry acted in good faith cannot be determined at this time for the same reasons they are not entitled to qualified immunity.  Questions of good faith arising under the NJTCA are determined by the same reasonableness standard courts apply to qualified immunity.  *See* N.J. Stat. Ann. § 59:3-3; *Mantz v. Chain*, 239 F. Supp. 2d 486, 507–08 (D.N.J. 2002) (citing *Lear v. Twp. of Piscataway*, 566 A.2d 557 (N.J. Super. Ct. App. Div. 1989)).  Because factual disputes material to the determination of good faith immunity exist, the Court cannot determine at the pleading stage whether the NJTCA shields Simpkins and Henry from liability for Simpkins' use of deadly force on Dorsey.

The sudden emergency doctrine applies when "a party [was] confronted by a sudden emergency over which he had no control, without fault on his part." *Roberts v. Hooper*, 438 A.2d 351, 353 (N.J. Super. Ct. App. Div. 1981).  The doctrine "negates negligence if the jury finds that the party chose one of alternative reasonably prudent courses of action, even though, by hindsight, another course of action would have been safer." *Id.* at 478–79.  This doctrine is only applicable to negligence claims under New Jersey law and is therefore applicable only to Plaintiff's claims of gross negligence and negligence.

The standard for determining whether a defendant should not be liable because of a sudden emergency is reasonableness.  *See Harpell v. Pub. Serv. Coordinated Transp.*, 120 A.2d 43, 47 (N.J. 1956) (holding that even when one "must make a speedy decision" in the face of an emergency, the "the conduct required is still that which is reasonable under the circumstances").  Therefore, even assuming, without deciding, that Simpkins' encounter with Dorsey was a sudden event, Simpkins may still be liable for negligence if his conduct was unreasonable.  As stated

previously, there remain material factual disputes surrounding the encounter to determine whether Simpkins acted reasonably.  Therefore, Simpkins is not entitled to dismissal of Plaintiff's negligence claim under the sudden emergency doctrine at this time.

### E.  Municipal Liability for Failure to Train and Supervise (Count II)

The City and Henry move to dismiss Plaintiff's municipal liability claims for failure to train and supervise NPD officers under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  Because the Complaint fails to demonstrate that a policy or custom caused the violations of Dorsey's constitutional rights or that the failure to train and supervise NPD officers amounted to deliberate indifference, Plaintiff's *Monell* claims are dismissed without prejudice.

A § 1983 claim against a municipality may proceed in two ways.  *Est. of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019).  First, a municipality may be liable under § 1983 if a plaintiff identifies a policy or custom that was the "proximate cause" of his injuries by "demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges." *Id.* at 798.  A policy exists "when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (internal quotation marks, citation, and alteration omitted).  A custom may be established "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citation omitted).

Second, a municipal liability claim may also be premised on a municipality's failure to properly train, supervise, or discipline its employees.  *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) ("[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation . . . under § 1983.").

To plead such a claim involving police misconduct, a plaintiff must demonstrate that a city's failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Roman*, 914 F.3d at 798 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). A plaintiff sufficiently pleads deliberate indifference by showing that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (quoting *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011) (alterations omitted)). In addition, "[t]he failure to train must have a causal nexus with [the plaintiff's] injury." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 226 (3d Cir. 2014) (citation and internal quotation marks omitted).

Similarly, "supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm[.]" *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted)). Liability can also attach against supervisors "if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Id.*

Here, Plaintiff has not pled a municipal policy or custom of engaging in the specific kinds of constitutional violations alleged in the Complaint. The Complaint does not allege that a municipal decisionmaker with "final authority" to make policy issued an "official proclamation, policy, or edict" about the use of excessive force or the practice of search or arrest without probable cause. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). In addition, the Complaint lacks any factual allegations to support a plausible inference that a municipal policy can be affirmatively linked to Simpkins' use of excessive force on Dorsey.

17

Similarly, Plaintiff fails to adequately allege a custom, so "well-settled and permanent as virtually to constitute law," of permitting excessive force, illegal search and seizure, or other constitutional violations that proximately caused Dorsey's death. *Bielevicz*, 915 F.2d at 850. The Complaint also fails to allege that Henry or the City had any personal or direct involvement in the violations of Dorsey's rights.

Plaintiff argues that the Complaint has sufficiently pled an unconstitutional custom and deliberate indifference to the lack of adequate training for NPD officers. Plaintiff relies on several allegations in the Complaint, including a 2009 civil lawsuit against Simpkins for allegedly pointing his gun at a football coach and two teenagers during a traffic stop ("2009 lawsuit"), a Consent Decree the City entered into with the Justice Department in 2016 ("Consent Decree") and a subsequent monitoring plan, to show that the City and Henry had notice of an unconstitutional custom and that they were indifferent to inadequate training and supervision of NPD officers. Plaintiff also cites *Roman* as "helpful guidance" as to the sufficiency of her claims. These arguments are unpersuasive, and *Roman* is distinguishable from this case.

In *Roman*, the Third Circuit held that plaintiff Roman had sufficiently pled a *Monell* failure-to-train claim based on a custom of warrantless searches against the City of Newark. *See Roman*, 914 F.3d at 798–99. On the issue of unconstitutional custom, the Third Circuit found that the documents cited by Roman, such as the Consent Decree, covered the same types of unconstitutional conduct as he alleged. *Id.* at 799. The Third Circuit also found that while the Consent Decree was not in place during Roman's search and arrest in May 2014, the investigation that resulted in the Consent Decree and federal supervision began in May 2011 and ended in July 2014, so the Court could "fairly infer that the problems that led to [the Consent Decree] were occurring during the time of [Roman's] allegations and for some time before that." *Id.*

The Third Circuit also found that Newark's failure to train and supervise its officers amounted to deliberate indifference.  *See id.*  The Court noted that the head of the police union was quoted in the newspaper stating that he was last trained in 1995 when he first joined the force.  *Id.* at 799–800.  The Consent Decree also indicated that NPD officers, in general, were not trained on "the requirements of [the] Fourth Amendment and related law."  *Id.* at 800.  These allegations, the Third Circuit concluded, were "enough to prove municipal liability because the City [knew] to a moral certainty that its officers would need to conduct searches" but had failed to provide training for constitutional policing under the Fourth Amendment since 1995.  *Id.* (internal quotation marks and citation omitted) (alteration in original).

Here, the Complaint has not pled sufficient allegations to raise a plausible custom claim to survive a motion to dismiss.  First, Dorsey's claim arose in January 2021, almost seven years after the federal investigation into the NPD ended and almost five years after the City entered into the Consent Decree.  There is no similar temporal proximity between the alleged unconstitutional police conduct and the Consent Decree for this Court to "fairly infer" that the problems covered in the Consent Decree had continued and proximately caused the violations of Dorsey's rights.  Second, the Complaint makes no reference to any civilian complaint about the same constitutional violations alleged by Plaintiff other than a reference to the 2009 lawsuit.  These allegations alone do not plausibly show a custom of unconstitutional policing.

As for the failure-to-train-and-supervise claim, the Complaint does not adequately allege the manner in which the training or supervision of police officers was inadequate.  Instead, the Complaint alleges that the 2016 Consent Decree found that NPD's inadequate supervision, deficient training, and lack of accountability surrounding the use of force by its officers contributed to a pattern of Constitutional violations and that Defendants knew of these policies, customs, and

practices and permitted their continuance.  These general allegations do not support a plausible inference that the City or Henry knew to a moral certainty that NPD officers have been inadequately trained in policing under the Fourth Amendment and that a pattern of unconstitutional police conduct has developed as a result.  *See Adams v. City of Atl. City*, 294 F. Supp. 3d 283, 304 (D.N.J. 2018) ("'[A] pattern of similar constitutional violations by untrained employees' is necessary 'to demonstrate deliberate indifference for purposes of failure to train'") (quoting *Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014)).

Accordingly, Plaintiff's *Monell* claim for failure to train and supervise will be dismissed without prejudice.

### F.  New Jersey Constitutional Claims

In addition to § 1983 claims, Plaintiff alleges that Defendants violated Dorsey's right to equal protection and to be free from unreasonable seizure under the New Jersey Constitution.  *See* N.J. Const. art. I, § 1; *id.* art. I, § 7.  Henry and the City seek to dismiss these claims for failure to state a claim.  This Court will address each claim in turn.

#### 1.  Article I, Section 1 (Counts IV and XI)

While both Counts IV and XI allege violations of Article 1, Section 1 of the New Jersey Constitution, Count IV is a standalone constitutional claim, whereas Count XI brings an identical claim under the NJCRA.   Because "civil claims for violations of the New Jersey Constitution can only be asserted by way of the [NJCRA]," *Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 548 (D.N.J. 2013), Count IV will be stricken and dismissed with prejudice.  The remaining Article I, Section 1 claim in Count XI will be dismissed without prejudice for failure to state a claim.

New Jersey courts have interpreted Article 1, Section 1 as conferring a right to equal protection analogous to that available under the Fourteenth Amendment.[13]  *See Secure Heritage, Inc. v. City of Cape May*, 825 A.2d 534, 545 (N.J. App. Div. 2003) (citing *Doe v. Poritz*, 662 A.2d 367, 414 (N.J. 1995)).  Courts in this district have found that "[t]he standard for an equal protection claim under the U.S. Constitution is analogous to the standard for an equal protection claim under the New Jersey Constitution."  *See Sharifi v. Twp. of E. Windsor*, No. 21-18097, 2023 WL 2182003, at *9 (D.N.J. Feb. 23, 2023) (quotations and citation omitted).  Accordingly, this Court will analyze Plaintiff's Article I, Section 1 claim under the standard of a Fourteenth Amendment equal protection claim.

To state a § 1983 equal protection claim, a plaintiff must allege that (1) she is a member of a protected class and (2) she received different treatment than that received by other similarly situated individuals.  *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992).  In addition, race is one of the constitutionally protected classes.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440–41 (1985) (discussing protected classes).  "Persons are similarly situated for purposes of an equal protection claim when they are alike 'in all relevant aspects.'"  *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  Further, a plaintiff must allege "intentional discrimination."  *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015), *as amended* (Feb. 2, 2016).

While Plaintiff has met the first element, she has not sufficiently alleged that Defendants treated similarly situated persons outside of Dorsey's protected class differently.  "[A]n allegation

---

[13] Article 1, Section 1 of the New Jersey Constitution provides:  "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness."  N.J. Const. art. I, § 1.

of an equal protection violation still must contain a claim that a plaintiff has been treated differently from others who are similarly situated." *Phillips*, 515 F.3d at 244. The Complaint fails to do so. Moreover, Plaintiff has not sufficiently set forth discriminatory intent on the part of any of the Defendants. The Third Circuit has declared that discriminatory intent requires that the decision-maker took "a particular course of action at least in part '*because of*,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Antonelli v. New Jersey*, 419 F.3d 267, 274 (3d Cir. 2005) (emphasis added) (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279, (1979)). The Complaint fails to sufficiently allege that Defendants subjected Dorsey to disparate treatment because of his race.

Accordingly, Plaintiff's equal protection claim is dismissed without prejudice.

### 2. *Article I, Section 7 (Count V)*

Only the City moves to dismiss Plaintiff's constitutional claim under Article I, Section 7 of the New Jersey Constitution, arguing that Plaintiff cannot bring a standalone Article I, Section 7 claim. The City's argument has merit because, as previously noted, "civil claims for violations of the New Jersey Constitution can only be asserted by way of the New Jersey Civil Rights Act." *Martin*, 965 F. Supp. 2d at 548. Accordingly, Count V is dismissed without prejudice for asserting a standalone New Jersey constitutional claim.

### G. *Respondeat Superior* **Liability (Count X)**

Count X asserts that the City and Henry are liable for Simpkins' misconduct under the doctrine of *respondeat superior*. Count X will be dismissed without prejudice.

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable solely because it employs a

tortfeasor.")  Therefore, Plaintiff cannot attach *respondeat superior* liability to the City and Henry for her federal and state constitutional claims.

Turning to Plaintiff's common law tort claims, "there can be no vicarious liability by a public entity for intentional torts committed by its employees; that is, with respect to such intentional torts, the theory of *respondeat superior* does not apply."  *Holmes v. New Jersey*, No. 17-2160, 2017 WL 5951579, at *2 (quoting *Hoag v. Brown*, 935 A.2d 1218, 1230 (N.J. Super, Ct. App. Div. 2007)).  As to Plaintiff's negligence-based claims, *respondeat superior* liability cannot attach because all of the tort claims will be dismissed for noncompliance with the NJTCA. Therefore, Count X will be dismissed without prejudice.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motions are **GRANTED**.  Except for Count IV, which is dismissed with prejudice, the Complaint is dismissed without prejudice.  Plaintiff shall have thirty (30) days to file an amended complaint.  An appropriate order follows.


_____/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**


Orig:       Clerk
cc:         Michael A. Hammer, U.S.M.J.
            Parties

23