<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARILYN WAGNER, *on behalf of Minor Child B.D.*, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF NEWARK, et al., <br><br> Defendants. | Civil Action No. 23-731 (SDW) (MAH) <br><br> **OPINION** <br><br> February 27, 2025 |

**WIGENTON**, District Judge.

Before this Court are Defendants the City of Newark (the "City")[1] and Police Chief Darnell Henry's ("Henry") (collectively "Defendants") Motions to Dismiss[2] (D.E. 63 & 64 ("Motions")) Plaintiff Marilyn Wagner's ("Plaintiff") Amended Complaint (D.E. 59) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and § 1367(a). Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral

---

[1] The City's cover page to its Moving Brief maintains that the Newark Police Department ("NPD") was "improperly pled as an entity separate and apart from the City." (D.E. 64-1 at 1.) This Court agrees. *See* N.J. Stat. Ann. § 40A:14-118 (stating that New Jersey police departments are "an executive and enforcement function of municipal government"); *Padilla v. Township of Cherry Hill*, 110 Fed. App'x 272, 278 (3d Cir. Oct. 5, 2004); *Alsaidi v. City of Paterson*, No. 22-6697, 2024 WL 4053085, at *4 (D.N.J. Sept. 5, 2024) (same). Hereinafter, this Court's references to the City encompass both the City and the NPD unless otherwise stated.

[2] Plaintiff has also named Officers John Does 1–5, Officers Jane Doe 1–5, John Doe Sergeants 1–5, and Jane Doe Sergeants 1–5 of the Newark Police Department as Defendants. "Although courts may 'allow claims based upon 'fictitious' defendants because they may be found and named later through the discovery process,' where a plaintiff has failed to plead facts sufficient to sustain a claim against any defendant, claims against these fictitious defendants will be dismissed as well." *Madlinger v. LexisNexis Risk Sols.*, No. 23-2582, 2024 WL 3219495, at *4 n.7 (D.N.J. June 28, 2024) (quoting *K.J. v. ex rel. Lowry v. Div. of Youth & Fam. Servs.*, 363 F. Supp. 2d 728, 740 (D.N.J. 2005)).

1

argument pursuant to Rule 78 and Local Civil Rule 78.1.  For the reasons stated herein, the Motions are **GRANTED.**

I. **FACTUAL AND PROCEDURAL BACKGROUND**

The Court refers to its prior opinion dated May 24, 2024 (D.E. 56 ("Op.")) for a fuller recitation of the factual background.  The underlying factual scenario involves the shooting and death of Carl Dorsey III, a thirty-nine-year-old Black man, by Defendant Police Officer Rodney Simpkins ("Defendant Simpkins") on January 1, 2021.  (Op. at 2.)

On June 27, 2024, Plaintiff filed an Amended Complaint alleging unconstitutional search and seizure (Counts II and III), failure to administer medical aid (Count IV), municipal liability (Count V), and failure to train and/or supervise (Count VIII) under 42 U.S.C. § 1983[3]; excessive use of force in violation of § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2 (Counts I and VI); violation of Mr. Dorsey's due process rights under the New Jersey Constitution (Count VII); common law tort claims (Counts IX to XIII)[4]; and wrongful death under the New Jersey Wrongful Death Act ("NJWDA"), N.J. Stat. Ann. § 2A:31-1 (Count XIV). (D.E. 59 at 23–43.)  Count XV raises the New Jersey Survival Act, N.J. Stat. Ann. § 2A:15-3 *et seq.*, which does not create a basis for relief, but permits an estate administrator or executor to bring an action on behalf of the intestate or testator.  *Endl v. New Jersey*, 5 F. Supp. 3d 689, 695 n.5 (D.N.J. 2014).

---

[3] Section 1983 imposes liability on "every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

[4] Plaintiff's common law claims are: assault (Count IX), battery (Count X), intentional infliction of emotional distress (Count XI), and negligent infliction of emotional distress ("NIED") (Count XII).  (D.E. 59 at 37–40.)  Count XIII is labeled as a "negligent infliction of emotional distress" claim but contains allegations seemingly asserting a negligent retention/supervision claim.

2

Defendants moved to dismiss Plaintiff's Amended Complaint in July 2024. (D.E. 63 & 64.) The parties timely completed briefing. (D.E. 63–64, 72–73, 74, 77.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The pleading should "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). The analysis involves a two-step approach. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). First, the Court parses between the factual and legal elements of a claim, treating "all of the complaint's well-pleaded facts as true," but disregarding any legal conclusions. *Id.*; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Second, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

When a plaintiff pleads factual content that enables the Court to draw "the reasonable inference that the defendant is liable for the misconduct alleged," a claim has facial plausibility. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that

3

requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2).  *Id.*  The Court considers "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Belichick*, 605 F.3d at 230 (citation omitted).

### III. DISCUSSION

#### A. Standing

The City argues that the Amended Complaint fails to sufficiently plead standing as required by the New Jersey Survival Act ("the Survival Act") and the NJWDA.  More specifically, the City contends Plaintiff does not set out "the authority pursuant to which she purports to act as administratrix," as well as that she or the minor heir she purports to represent suffered losses compensable under the NJWDA. (D.E. 64-1 at 16–18.)  Defendant Henry also moves to dismiss Plaintiff's claims under the Survival Act and the NJWDA, arguing Plaintiff cannot show lost earnings between the time of injury and the fatality.  (D.E. 63-2 at 22–23.)

An administrator *ad prosequendum* ("AAP") can assert a claim under the NJWDA on behalf of "a person who has died by virtue of a wrongful act, neglect or default" for that person's pecuniary injuries.  *Beim v. Hulfish*, 83 A.3d 31, 34 (N.J. 2014) (citing N.J. Stat. Ann. §§ 2A:31-1, -5); N.J. Stat. Ann. § 2A:31-2(a).  A plaintiff "who is qualified for appointment as administrator *ad prosequendum* . . . but who was not yet appointed as such at the time the plaintiff commenced an action under [the NJWDA]" may still be designated as the AAP; a court can "allow the plaintiff to amend pleadings *nunc pro tunc* relating back to the plaintiff's first filed pleading to reflect the

designation." N.J. Stat. Ann. § 2A:31-2(b).[5]  Plaintiff's brief argues the "Order [a]ppointing Marilyn Wagner as Co-Administratrix Ad Prosequendum . . . [by] the Essex County Probate Part put the standing challenge raised by the City to bed," (D.E. 72 at 5), citing an "Exhibit A" this Court cannot find anywhere in the record.  Counts XIV and XV are dismissed; however, in light of New Jersey law, Plaintiff has thirty days from the date of this opinion and its accompanying order to provide this Court with the appointing order from the state court.

### B.  § 1983 Claims

#### i.  *Monell Liability:  Unconstitutional Policy or Custom*

A municipality may be held liable under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  District courts review municipal liability claims separately from claims against individual police officers, as municipalities cannot be held vicariously liable for their employees' actions under § 1983.[6]  *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004).  Individual defendants who are policymakers may be liable if a plaintiff shows that such defendants established and maintained a policy or custom, while deliberately indifferent[7] to the

---

[5] The Survival Act contains a similar provision.  N.J. Stat. Ann. § 2A:15-3(b) provides:

> In the case of a plaintiff qualified for appointment as administrator who was not yet appointed administrator at the time the plaintiff commenced an action under this section, the court may allow the plaintiff to be designated administrator for the purposes of this section and to allow the plaintiff to amend pleadings *nunc pro tunc* relating back to the plaintiff's first filed pleading to reflect the designation.

[6] To state a claim against an individual under § 1983, a plaintiff must allege that (1) "the conduct complained of was committed by a person acting under color of state law" and (2) "the conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States."  *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011); *see* 42 U.S.C. § 1983.

[7] A plaintiff sufficiently pleads deliberate indifference by showing that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."

5

consequences, which directly caused a constitutional harm. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

The City argues that Plaintiff's *Monell* claim fails to allege an unconstitutional policy or custom because she relies on factual circumstances specific to Mr. Dorsey's death and does not point to factual circumstances documenting or suggesting those circumstances previously occurred. (D.E. 64-1 at 26–27.) Defendant Henry contends Plaintiff's *Monell* claim against him should be dismissed because Plaintiff has not shown he is a policymaker within the City or that he was "specifically deliberately indifferent to the Division's alleged need for training." (D.E. 63-2 at 7.)

Plaintiff's Amended Complaint fails to state a viable *Monell* claim against either Henry or the City. Regarding Henry, Plaintiff's Amended Complaint states in a conclusory fashion that he was "responsible for the implementation of policies and procedures," but this fails to establish Henry had *final* policymaking authority. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("[T]he authority to make a municipal policy is necessarily the authority to make a *final* policy."); *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010) (concluding the District Court properly dismissed the plaintiff's *Monell* claim because she failed to allege the defendant police chief had final policymaking authority). Plaintiff's *Monell* claim against Defendant Henry is thereby dismissed.

As to the City, this Court's prior opinion iterated that Plaintiff's reliance on a 2009 civil lawsuit against Defendant Simpkins for allegedly using excessive force during a traffic stop and the 2016 Consent Decree between the City and the Justice Department were—and now continue

---

*Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).

to be—unavailing.[8]  (*See* Op. at 18–19.)  Plaintiff's asserted bases allegedly identifying "more specific ways in which [the City's] customs and policies directly led to the Decedent's death," (D.E. 72 at 14), are also futile given that the remainder of the Amended Complaint fails to plead facts showing the City "had knowledge of 'similar conduct in the past,'" failed to act, and that failure led to Decedent's death.  *See Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019); *Chey v. LaBruno*, 608 F. Supp. 3d 161, 184 (D.N.J. 2022) (holding the plaintiff's failure to identify analogous incidents in which the defendant police department's alleged practices resulted in injuries was detrimental to *Monell* claim).  Thus, Plaintiff's *Monell* claim against the City premised on an unconstitutional policy or custom is dismissed.

    ii.    *Failure to Train and/or Supervise*

The City argues Plaintiff's failure to train claim relies on documents and matters previously addressed and rejected by this Court as an insufficient basis to survive a motion to dismiss.  (D.E. 64-1 at 34.)  Defendant Henry contends Plaintiff fails to plead facts identifying a specific failure on his part that led to the violation of Mr. Dorsey's rights.  (D.E. 63-2 at 9.)  Plaintiff relies on the arguments previously made concerning the 2009 incident and the DOJ Report and Consent Decree.  (D.E. 72 at 17–24.)  For the reasons previously stated, that argument is unavailing.  Additionally, in her brief, Plaintiff points out that at the time of Mr. Dorsey's death, the City had "not yet undergone a full Use of Force Audit" or fully implemented the Consent Decree's requirements for a Use of Force Review Board.  (*Id.* at 19–20.)  Reliance on the latter is insufficient to survive

---

[8] Plaintiff repeatedly points to *Widmaier v. City of Newark*, No. 16-2533, 2019 WL 1895087 (D.N.J. Apr. 29, 2019) to bolster her argument that her allegations about the 2009 lawsuit and DOJ Report and Consent Decree sufficiently plead § 1983 claims.  Yet, *Widmaier* is distinguishable.  The allegedly unconstitutional conduct in *Widmaier* occurred on July 21, 2015, which was temporally proximate to the time of the DOJ Report and subsequent Consent Decree. *Id.* at *1, 3–4.  Further, the court found that the plaintiff's complaint contained allegations of wrongdoing similar to the conduct set forth in the DOJ Report.  *Id.* at *4.  For those reasons, the *Widmaier* court reasoned the plaintiff properly pled a failure to train and municipal custom claim against Newark.  *Id.*

7

Defendants' Motions given that the Amended Complaint still fails to set forth how such noncompliance amounts to deliberate indifference, let alone how it caused Mr. Dorsey's death. *See City of Canton v. Harris*, 489 U.S. 378, 388–91 (1989) (stating that for liability to attach under a failure to train theory, "the identified deficiency in a city's training program must be closely related to the ultimate injury"). Accordingly, Count VIII is dismissed as to both Defendants.

### C. Due Process Claim under N.J. Const. art. I, § 1[9]

Defendant Henry asks this Court to dismiss Count VII, arguing that Plaintiff's failure to plead specific facts regarding how he discriminated against Mr. Dorsey or how Mr. Dorsey was treated differently from others similarly situated is fatal to her due process claim. (D.E. 63-2 at 16–17.)

"The standard for an equal protection claim under the U.S. Constitution is analogous to the standard for an equal protection claim under the New Jersey Constitution." *Davis v. N.J. Dep't of Corrs.*, No. 17-6898, 2018 WL 4179462, at *7 (D.N.J. Aug. 31, 2018). To bring a successful claim under § 1983 for a denial of equal protection, a plaintiff must prove the existence of purposeful discrimination, namely that he or she "receiv[ed] different treatment from that received by other individuals similarly situated." *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990) (alteration in original) (quoting *Kuhar v. Greensburg-Salem Sch. Dist.*, 616 F.2d 676, 677 n.1 (3d Cir. 1980)). Plaintiff's Amended Complaint fails to identify what differing treatment, if any, Defendant Henry carried out against Mr. Dorsey, let alone how such treatment was carried out with discriminatory intent. *See Antonelli v. New Jersey*, 419 F.3d 267, 274 (3d Cir. 2005) ("Discriminatory intent 'implies that the decision-maker . . . selected or reaffirmed a particular

---

[9] "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." N.J. Const. art. I, § 1.

course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.'") (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). As a result, Count VII is dismissed as to Defendant Henry.

### D. Common Law Tort Claims[10]

Generally, tort claims against New Jersey public entities and public employees are governed by the NJTCA. *Nieves v. Off. of the Pub. Def.*, 230 A.3d 227, 235 (N.J. 2020). While "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct," the public entity can be held liable "for injury proximately caused by an act or omission of a public employee within the scope of his employment." N.J. Stat. Ann. §§ 59:2-2(a), -10. A public employee that "acts in good faith in the execution or enforcement of any law" will not be liable. *Id.* § 59:3-3. Where a public employee is not liable, a public entity is not liable for an injury resulting from a public employee's act or omission. *Id.* § 59:2-2(b).

    *i.*    *Intentional Torts: Assault, Battery, IIED*

The City argues it cannot be liable for intentional torts under a *respondeat superior* theory. (D.E. 64-1 at 42–43.) This Court agrees and dismisses Counts IX, X, and XI as it is undisputed these are intentional torts. *See Hickman v. Freehold Borough*, No. 15-3578, 2017 WL 1197806, at *15 (D.N.J. Mar. 31, 2017) (finding that under the NJTCA the defendant city could not be liable on a *respondeat superior* theory for a police patrolman's intentional torts of assault and battery since those torts requires a showing of intentional or willful misconduct); *Hoag v. Brown*, 935 A.2d 1218, 1230 (N.J. Super. Ct. App. Div. 2007) ("[T]here can be no vicarious liability by a

---

[10] The City withdrew its initial argument that Plaintiff failed to adequately plead compliance with the NJTCA's notice requirements. (D.E. 77 at 5.)

public entity for intentional torts committed by its employees; that is, with respect to such intentional torts, the theory of *respondeat superior* does not apply.").

Similarly, this Court finds the Amended Complaint fails to adequately plead facts that Defendant Henry committed intentional torts against Mr. Dorsey. Defendant Henry rightly notes he was not present at the accident scene. (D.E. 63-2 at 17.) As to assault, the Amended Complaint does not allege any act of Henry directed towards Mr. Dorsey that would have put Mr. Dorsey in imminent apprehension.[11] The Amended Complaint also does not allege any offensive contact by Henry.[12] As such, those claims are dismissed. *See Wierzbicki*, 2021 WL 4148105 at *9 (dismissing assault and battery claims against a defendant officer where the second amended complaint contained no factual allegations about the officer's acts or offensive contact with the plaintiff).

Plaintiff's IIED claim against Defendant Henry is also hereby dismissed. A successful IIED claim requires that a plaintiff show that: (1) the "defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the conduct proximately caused plaintiff's emotional distress; and (4) the emotional distress was 'so severe that no reasonable [person] could be expected to endure it.'" *Johnson v. City of Hoboken*, 299 A.3d 856, 864 (N.J. Super. Ct. App. Div. 2023) (alteration in original) (quoting *Ingraham v. Ortho-McNeil Pharm.*, 25 A.3d 1191, 1195 (N.J. Super. Ct. App. Div. 2011)). Because the Amended Complaint does not set out how Defendant Henry's actions constituted IIED, this claim is dismissed. *See Wierzbicki*,

---

[11] A person is liable for assault if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." *Wierzbicki v. City of Jersey City*, No. 19-17721, 2021 WL 4148105, at *9 (D.N.J. Sept. 10, 2021) (quoting *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009)).

[12] "[W]ith battery, a plaintiff must allege that there was, in fact, an offensive contact." *Shelley v. Linden High Sch.*, No. 19-20907, 2020 WL 6391191, at *3 (D.N.J. Nov. 2, 2020) (citing *Leang*, 969 A.2d at 1117).

2021 WL 4148105 at *10–11.  To summarize, Counts IX, X, and XI against Defendant Henry are dismissed.

    *ii.*    *NIED*

Defendant Henry disclaims liability premised on Defendant Simpkins's tortious acts, arguing he neither trains nor supervises NPD Officers and is also not responsible for implementing or forming policies.  (D.E. 63-2 at 16.)  Defendant Henry also contends that because he was not responsible for policymaking, training, or supervising, he owed neither Plaintiff nor Mr. Dorsey a duty, such that Plaintiff's NIED claim should be dismissed.  (D.E. 63-2 at 18–19.)

Under New Jersey law, the elements of a NIED claim are:  (1) the defendant owed plaintiff a reasonably duty of care; (2) a breach of that duty; (3) that the plaintiff suffered severe emotional distress; and (4) that the breach proximately caused the plaintiff's injury.  *Walker v. City of Newark*, No. 19-16853, 2020 WL 3542502, at *14 (D.N.J. June 30, 2020).  The allegations in Plaintiff's Amended Complaint seemingly only assert an NIED claim against Detective Defendants; Plaintiff's Amended Complaint fails to state on what basis Defendant Henry owed Mr. Dorsey a duty, let alone how he breached that duty.  *See Casciano v. City of Paterson*, No. 19-9475, 2023 WL 5035645, at *8–9 (D.N.J. Aug. 8, 2023) (dismissing NIED claim where the complaint failed to plead a duty and how it was breached).  Plaintiff's failure to plead the elements of NIED as to Defendant Henry is fatal to her claim; Count XII is dismissed as to Defendant Henry.

    *iii.*    *Negligent Hiring, Retention, and/or Supervision*

The City moves to dismiss Plaintiff's negligent supervision claim on the grounds that her § 1983 claims fail and alternatively, that she fails to adequately plead the claim under state law.  (D.E. 64-1 at 27–31.)

A claim asserting negligent hiring, retention, and/or supervision is premised on an employer's direct fault, not on a vicarious liability theory. *G.A.-H. v. K.G.G.*, 210 A.3d 907, 916 (N.J. 2019). An employer is liable for negligent hiring if the plaintiff demonstrates that (1) the employer "knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could have reasonably foreseen that such qualities created a risk of harm to other persons" and (2) the employee's "incompetence, unfitness or dangerous characteristics proximately caused the injury." *Di Cosala v. Kay*, 450 A.2d 508, 516 (N.J. 1982); *see K.G.G.*, 210 A.3d at 916 (stating that the same inquiry applies to a negligent supervision or training claim, but "framed in terms of supervision or training"). An employer can be liable under a negligent hiring theory for employee conduct that falls outside the scope of employment. *Id.*

Plaintiff's negligent hiring, retention, and/or supervision claim fails for the same reason her § 1983 claims fail. *See Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) ("Th[e] deliberate indifference standard applies to plaintiffs' allegations of negligent supervision and failure to investigate."). As previously discussed, Plaintiff does not plead facts demonstrating that the City knew or had reason to know of similar incidents taking place or that Defendant Simpkins's alleged unfitness or dangerous characteristics caused Mr. Dorsey's death. *See Wierzbicki*, 2021 WL 4148105 at *5 (dismissing a negligent hiring, retention, and/or supervision claim against Jersey City because the plaintiff's second amended complaint alleged "no facts [suggesting Jersey City] had actual or constructive knowledge of the [o]fficer [d]efendants' dangerous propensities before the [i]ncident"). Count XIII is dismissed as to the City.

### E. Qualified Immunity & Good Faith Immunity

Notwithstanding that this opinion dismisses several of Plaintiff's claims for failure to state a claim, this Court will still consider Defendant Hnery's assertions of immunity. Defendant Henry

puts forth that qualified immunity shields him from liability as Plaintiff has not pled facts demonstrating he violated a clearly established constitutional right. (D.E. 63-2 at 15.) Alternatively, he submits good faith immunity bars him from liability. (*Id.*)

"[Q]ualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Thomas v. Independent Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)). "At the motion to dismiss stage, a law enforcement officer is shielded by qualified immunity if (1) the facts alleged show the officer's conduct did not violate a constitutional right, or (2) the right violated was not clearly established in light of the specific context of the case." *Taylor v. Rosa*, 856 F. App'x 376, 378 (3d Cir. 2021) (citing *Reedy v. Evanson*, 615 F.3d 197, 223–24 (3d Cir. 2010)). Here, the Amended Complaint does not clearly indicate that Defendant Henry's conduct did not violate a constitutional right or that the right was not clearly established. At several junctures, it is unclear the extent to which Defendant Henry owed Mr. Dorsey a duty, engaged in certain actions constituting either a tort or constitutional violation, or was a policymaker for the NPD. Accordingly, this Court denies Defendant Henry's Motion based on qualified immunity. *See Klingberg v. Hatcher*, No. 17-5563, at *4 n.6 (D.N.J. July 13, 2018) (declining to address qualified immunity where there was "a possibility that an amendment would cure the deficiencies noted in the amended complaint"); *Koyi v. Borough of Tinton Falls*, No. 21-20352, 2023 WL 7195170, at *7 (D.N.J. Nov. 1, 2023) (declining to find qualified immunity as a valid basis to dismiss the plaintiff's complaint where the "threadbare [c]omplaint" failed to describe the circumstances surrounding the alleged use of excessive force by police officers such that the court could not determine whether the officers acted reasonably); *see also Debrew v. Auman*, 354 F. App'x 639, 642 (3d Cir. 2009) (vacating District Court's grant of a motion to dismiss on qualified immunity grounds after finding such

dismissal premature where the sparse complaint "failed to disclose whether the defendants' actions did not violate a clearly established constitutional right").

In the same vein, this Court declines to determine whether the NJTCA's good faith immunity[13] shields Henry from Plaintiff's claims. Questions of good faith arising under the NJTCA are determined by the same reasonableness standard courts apply to qualified immunity. *Mantz v. Chain*, 239 F. Supp. 2d 486, 507–08 (D.N.J. 2002) (citing *Lear v. Township of Piscataway*, 566 A.2d 557, 558 (N.J. Super. Ct. App. Div. 1989)). This Court's uncertainty as to the qualified immunity inquiry similarly prevents it from deciding the good faith immunity issue. *See id.* (declining to determine whether state trooper was immune under the good faith immunity doctrine where the court could not determine whether the state trooper acted reasonably under the qualified immunity inquiry).

### IV. CONCLUSION

For the reasons stated above, Defendants' Motions are **GRANTED** as set forth below:

1. Counts V and VII through XII, XIV, and XV are dismissed without prejudice as to Defendant Henry.

2. Counts V, VIII through XI, and XIII through XV are dismissed without prejudice as to Defendant the City.

Plaintiff shall be permitted to file one last amended complaint within thirty days of the date of this opinion and its accompanying order; no further opportunities shall be given.

                                                            /s/ Susan D. Wigenton
                                            **SUSAN D. WIGENTON, U.S.D.J.**

---

[13] The NJTCA grants immunity to a public employee "if he acts in good faith in the execution or enforcement of any law." *Walker v. City of Newark*, No. 19-16853, 2020 WL 3542502, at *13 (D.N.J. June 30, 2020), *as amended* (July 1, 2020).

Orig: Clerk
cc: Parties
Michael A. Hammer, U.S.M.J.